A.J., Appellant,

v.

STATE of Alaska, DEPARTMENT OF HEALTH AND SOCIAL SERVICES, DIVISION OF FAMILY & YOUTH SERVICES, Appellee.

No. S–10156.

Supreme Court of Alaska.

Jan. 17, 2003.

Robert S. Noreen, Law Office of Robert S. Noreen, Fairbanks, for Appellant.

D. Rebecca Snow, Assistant Attorney General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

The State of Alaska's Division of Family and Youth Services (DFYS) has been involved with Ann Jackson and her daughters since 1987 due to Ann's chronic substance abuse problem. DFYS petitioned to terminate Ann's parental rights to her two youngest daughters, Faye and Amelia, in July 2000. Because there was sufficient evidence that Ann's substance abuse justified termination under Alaska law, we affirm the superior court's termination of Ann's parental rights.

## II. FACTS AND PROCEEDINGS

### A. Facts

Ann Jackson[1] has six daughters; the youngest three all have the same father, Jefferson Simpson. The three oldest daughters are adults and live on their own. The fourth child, Janet, was seventeen at the time of the termination proceeding and was not included in the termination proceeding because she refused any placement away from her mother. The termination proceeding involved the two youngest daughters: Faye Jackson and Amelia Simpson.[2]

The Division of Family and Youth Services became involved with the custody of the daughters for the first time in 1987, prior to the birth of Amelia. At that time DFYS took emergency custody of Sylvia an older daughter and Janet and Faye when Ann was passed out and could not care for the children. After Ann completed a substance abuse treatment program, the girls were returned to her, and DFYS allowed its temporary custody to lapse. Ann again went through outpatient substance abuse treatment after a charge of driving while intoxicated in 1987.

In July of 1988 Ann took Sylvia to Dr. Marvin E. Bergeson to have Sylvia examined for possible sexual abuse by Jefferson. Syl-

via had reported to Ann that Jefferson had touched her while she was sleeping. Dr. Bergeson found no physical evidence of abuse but found the patient history to be suspicious and advised Ann that there could be sexual abuse absent physical evidence. Ann allowed Jefferson to continue living in the house after this incident with Sylvia.

Ann took Sylvia back to Dr. Bergeson for another examination of possible sexual abuse by Jefferson in April of 1990 after Sylvia reported that Jefferson came into her room while she was sleeping and tried to pull her pants down. Ann forced Jefferson to leave the house but he returned by February of 1991. In February 1991, fearing that Jefferson had sexually abused the girls, Ann had Janet, Faye, and Amelia examined. Dr. J. Timothy Foote found that there was evidence of sexual abuse to Faye.

DFYS took emergency custody of Janet, Faye, and Amelia in May of 1991 because the custodian who was supposed to care for the girls while Ann was in a treatment program refused to do so when it appeared that Ann was still drinking and refusing to go to treatment. In September 1991 both Jefferson and Ann stipulated that the girls were children in need of aid and should be placed in state custody for one year because of Ann's prolonged depression and substance abuse and the allegations of sexual abuse against Jefferson.

DFYS again took emergency custody of Janet, Faye, and Amelia in July 1993 when the Fairbanks Police were informed that Ann and the three girls were staying at the Fairbanks Hotel, that Ann was passed out and unable to care for the girls, and that the girls were running around the hotel unsupervised, hungry, and dirty. Ann entered the Regional Center for Alcohol and Other Addictions (RCAOA) for a short-term program in September 1993 and was discharged less than three weeks later for failure to follow directions and for falsifying a urine sample. In October 1993 both Jefferson and Ann stipulated that the girls were to remain in the

---

1. Pseudonyms have been used in this opinion for all family members.

2. Jefferson was served with notice but he failed to appear at the termination proceedings. His parental rights were terminated in March 2001 and he is not appealing the termination.

custody of the state for one year. Ann was readmitted to RCAOA on October 28 but was discharged for non-compliant behavior on November 29.

Faye and Amelia were again taken into emergency custody by DFYS in July 1996. This happened after Ann dropped off Faye, age ten, and Amelia, age six, at a local grocery store and told them to walk home. The girls walked around the downtown area, where they saw their mother in an intoxicated state, and then walked home. Their aunt was there, but she was unwilling to care for Faye and Amelia and called the Fairbanks Police, who took the girls to an emergency foster home. In November 1996 Ann and Jefferson again stipulated that Faye and Amelia were children in need of aid and, therefore, should be in state custody for up to two years.

Ann again entered substance abuse treatment in 1997. She was treated at RCAOA for seven months beginning in January before being administratively discharged in July. Ann was referred to the Women's and Children's Residential Program (WCRP) in April 1998 where she remained until she was discharged in July. Ann participated in the recommended aftercare program for about a month but did not finish this program. Faye and Amelia were returned to Ann's care in December.

Ann started showing signs of relapse around May of 1999. Ann had several urinalyses between May of 1999 and June of 2000 that showed positive results for various drugs, including (1) cocaine, (2) opiates, and (3) benzodiazepines and barbiturates. Other urinalyses came back with low creatinine levels, indicating that Ann had tried to dilute her urine to hide evidence of drug use.

Ann entered substance abuse treatment again in September 2000 and was discharged in November after completing her treatment plan. Ann had several urinalyses while in treatment which were positive for various drugs. Three such tests within one week in November 2000 showed positive results for, respectively, opiates and benzodiazepines,

barbiturates, and barbiturates and benzodiazepines. These results caused the treatment center to rate Ann as having a high relapse potential.

## B. Proceedings

DFYS petitioned for the termination of Ann's and Jefferson's parental rights to Faye and Amelia in July 2000. A trial was held before Superior Court Judge Mary E. Greene in December 2000. In her findings and order terminating parental rights issued in March 2001, Judge Greene found that there was clear and convincing evidence that Ann's ability to parent had been substantially impaired by her habitual use of drugs and alcohol and that this had resulted in harm to Faye and Amelia.

The court also found that it was likely that Ann consumed alcohol while pregnant with Amelia, resulting in Amelia having fetal alcohol syndrome, and that Ann failed to protect her children from sexual abuse by Jefferson, even though she was made aware of Jefferson's possible conduct as early as 1988 when Sylvia reported specific incidents to Ann. Further, the court found that Ann had failed to remedy the conduct that placed Amelia and Faye at substantial risk of harm.

As required by the Indian Child Welfare Act (ICWA),[3] Judge Greene found beyond a reasonable doubt that continued custody of Faye and Amelia by Ann was likely to result in serious physical or emotional damage to the girls, because it was likely that they would be sexually abused and because Ann was likely to relapse into substance abuse again and be unable to meet Faye's and Amelia's needs. The court also found by a preponderance of the evidence that active efforts had been made to prevent the breakup of the Indian family under ICWA[4] and that an "unusually extensive set of programs has been offered to this family." These programs included substance abuse treatment programs, intensive in-home services, parenting instruction, help with how to teach a fetal alcohol syndrome child, counseling, and parent support services.

---

**3.** 25 U.S.C. § 1912(f) (2001).

**4.** 25 U.S.C. § 1912(d).

For all of the above reasons, Judge Greene found that termination of Ann's parental rights was in Faye's and Amelia's best interests. As to Amelia, the court stated that "[a]ll efforts should be made immediately to find [Amelia] an Athabascan placement, although she has permanent placement . . . if a Native home cannot be found."[5] As to Faye, although noting that "termination is less clearly necessary," the court nonetheless found that termination was in Faye's best interest given the alternative of remaining in Ann's custody and that termination was necessary in order to find permanent placement for Faye because Ann had a history of interfering with the placement of her children. Judge Greene concluded that terminating Ann's parental rights made it more likely that successful permanent placement could be found for Faye and Amelia.

Ann appeals the termination of her parental rights.

## III. STANDARD OF REVIEW

 We will affirm a trial court's factual findings regarding termination of parental rights unless those findings are clearly erroneous.[6] A finding of fact is clearly erroneous when we are left with a definite and firm conviction that the trial court has made a mistake.[7] "Whether the factual findings are sufficient to satisfy the Child In Need of Aid (CINA) rules is a question of law" that we will review *de novo*.[8] We "adopt the rule of law that is most persuasive in light of precedent, reason, and policy" for questions of law.[9]

5. See 25 U.S.C. § 1915(b).

6. *A.A. v. State, Dep't of Family & Youth Servs.*, 982 P.2d 256, 259 (Alaska 1999).

7. *Dingeman v. Dingeman*, 865 P.2d 94, 96 (Alaska 1993).

8. *T.F. v. State, Dep't of Health & Soc. Servs.*, 26 P.3d 1089, 1092 (Alaska 2001).

9. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

10. AS 47.10.011(6) provides:
 Subject to AS 47.10.019, the court may find a child to be a child in need of aid if it finds by a

## IV. DISCUSSION

### A. The Superior Court's Findings that the Children Have Been Subjected to Conduct or Conditions Described in AS 47.10.011 Is Adequately Supported by the Record.

 Ann argues that the superior court is required to make findings as to the requirements of AS 47.10.011(6)[10] under the circumstances that exist at the time of termination, not merely through "historical chronology." Ann states that a "recital of stale events no longer applicable cannot solely create a catch-all for termination of parental rights involving an eleven-year-old daughter and a fourteen-year-old daughter wherein the court has admitted that any meaningful placement stability is in question." Ann asserts that Judge Greene failed to point to specific current problems to justify termination.

The state argued for termination under AS 47.10.011(1), (7), (8), (9), and (10),[11] not under subsection (6). Ann's argument that the superior court must meet the requirements of AS 47.10.011(6) fails because it does not respond to the state's petition to terminate. Judge Greene was not required to find that the state had met the requirements of AS 47.10.011(6) because the state did not argue for termination under that particular subsection.

 In response to Ann's argument that the superior court erred in relying on events that occurred prior to the termination proceedings, the state asserts that "the question is whether the parent's conduct had previous-

preponderance of the evidence that the child has been subjected to any of the following:
 . . . .
 (6) the child has suffered substantial physical harm, or there is a substantial risk that the child will suffer substantial physical harm, as a result of conduct by or conditions created by the child's parent, guardian, or custodian or by the failure of the parent, guardian, or custodian to supervise the child adequately[.]

11. These subsections of AS 47.10.011 deal with abandonment (subsection 1), sexual abuse (subsection 7), mental injury (subsection 8), neglect (subsection 9), and substance abuse leading to substantial risk of harm to the child (subsection 10).

ly made the child a child in need of aid, not whether it is making the child in need of aid at the time of the termination trial." Under AS 47.10.088(a)(1)(A),[12] as a prerequisite to terminating parental rights, the superior court is required to find by clear and convincing evidence that the children have been subjected to conduct or conditions described in AS 47.10.011.[13] We have previously stated that "the inquiry regarding CINA status at a termination hearing involves 'all evidence of the parent's pre-termination hearing conduct, including evidence of parental conduct pre-dating the CINA adjudication.' "[14] We therefore find that it was appropriate for the superior court to take all of Ann's past conduct into account in making its determination under AS 47.10.088(a)(1)(A).

Ann also argues that there was insufficient evidence to support the superior court's finding by clear and convincing evidence that the children remained children in need of aid under AS 47.10.011. Judge Greene issued a sixteen-page decision in which she found by clear and convincing evidence that Ann's substance abuse affected her parenting, causing her to neglect Faye and Amelia and posing a

risk that the girls would be sexually victimized. Judge Greene also found that Ann's lack of supervision of the girls resulted in a substantial risk that the girls would be sexually abused, that Ann's behavior subjected the girls to neglect, and that Ann's substance abuse resulted in substantial risk of harm to the girls. While the court's lengthy findings and order does not contain the recitation that Faye and Amelia are children in need of aid and does not state under which subsections of AS 47.10.011 the children qualified as children in need of aid, the findings are nonetheless legally sufficient. Under AS 47.10.088(a) an explicit finding that children are in need of aid as a condition of termination of parental rights is not required. But the court must find that the children have been subjected to "conduct or conditions described in AS 47.10.011." That section, in turn, describes conduct and conditions that must exist in order to find that a child is a child in need of aid. In the present case Judge Greene, without identifying subsections (7),[15] (9),[16] and (10)[17] of AS 47.10.011, explicitly found by clear and convincing evidence that the children had been subjected to conduct

---

**12.** AS 47.10.088(a)(1)(A) provides:

(a) Except as provided in AS 47.10.080(*o*), the rights and responsibilities of the parent regarding the child may be terminated for purposes of freeing a child for adoption or other permanent placement if the court finds

(1) by clear and convincing evidence that

(A) the child has been subjected to conduct or conditions described in AS 47.10.011[.]

**13.** AS 47.10.088(a)(1)(A); *see also J.H. v. State, Dep't of Health & Soc. Servs.*, 30 P.3d 79, 85 (Alaska 2001).

**14.** *A.H. v. State, Dep't of Health & Soc. Servs.*, 10 P.3d 1156, 1161 (Alaska 2000) (quoting *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 209 (Alaska 2000)).

**15.** AS 47.10.011(7) provides that a child may be adjudicated a child in need of aid when:

the child has suffered sexual abuse, or there is a substantial risk that the child will suffer sexual abuse, as a result of conduct by or conditions created by the child's parent, guardian, or custodian or by the failure of the parent, guardian, or custodian to adequately supervise the child; if a parent, guardian, or custodian has actual notice that a person has been convicted of a sex offense against a minor within the past 15 years, is registered or required to register as a sex offender under AS

12.63, or is under investigation for a sex offense against a minor, and the parent, guardian, or custodian subsequently allows a child to be left with that person, this conduct constitutes prima facie evidence that the child is at substantial risk of being sexually abused[.]

**16.** AS 47.10.011(9) provides that a child may be adjudicated a child in need of aid when:

conduct by or conditions created by the parent, guardian, or custodian have subjected the child or another child in the same household to neglect[.]

**17.** AS 47.10.011(10) provides that a child may be adjudicated a child in need of aid when:

the parent, guardian, or custodian's ability to parent has been substantially impaired by the addictive or habitual use of an intoxicant, and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child; if a court has previously found that a child is a child in need of aid under this paragraph, the resumption of use of an intoxicant by a parent, guardian, or custodian within one year after rehabilitation is prima facie evidence that the ability to parent is substantially impaired and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child as described in this paragraph[.]

or conditions that are described in those subsections. The findings thus comply with AS 47.10.088.

Judge Greene's findings that Faye and Amelia had been subjected to conduct or conditions tracking those described in AS 47.10.011 are supported by the record in this case. Ann has had a substance abuse problem that has required the repeated intervention of DFYS since 1987. On at least two occasions, Ann has stipulated that Amelia and Faye were children in need of aid due to Ann's alcohol abuse. Ann has been in at least four different substance abuse programs and has consistently failed to maintain her sobriety.[18] There is also substantial evidence that Ann's substance abuse was escalating from alcohol abuse to abuse of prescription and street drugs. Ann also consistently failed drug tests while in substance abuse treatment.

Ann's substance abuse placed the girls at substantial risk of harm and caused Ann to neglect the girls. DFYS has had to take at least one of the daughters into custody on at least six different occasions since 1987 because Ann was unable to care for the girls due to her substance abuse. On multiple occasions Ann has been found passed out and unable to care for the girls. Reports have been made over a period of years that the girls were dirty and hungry due to Ann's neglect. Ann's substance abuse has also impaired her judgment so that male visitors who pose a substantial risk to the girls are allowed in the home.

Both Faye and Amelia are special needs children who require consistent environments in order to meet educational goals. Amelia suffers from fetal alcohol syndrome, and Faye may suffer from fetal alcohol effect. Ann failed to provide the needed environment for Faye and Amelia because her substance abuse required the girls to get up, get dressed, and get themselves to school on their own. The girls were consistently absent from school, late in arriving, and were often picked up hours after school had ended. The principal of the girls' elementary school testified that Ann showed up intoxicated at the school.

The record also supports a finding that Faye and Amelia were at substantial risk of being sexually abused due to Ann's lack of supervision. The record shows that Ann took Sylvia to the doctor twice to have her examined for possible sexual abuse by Jefferson. Ann also took Faye to the doctor, and Dr. Foote determined that Faye had been sexually abused. Also, Ann testified that she was aware of the likelihood that Jefferson was sexually abusing her daughters. Therefore, there was sufficient evidence that Ann was aware that Faye and Amelia were at a substantial risk for sexual abuse but that Ann failed to protect her children from this danger.

We consequently conclude that the findings that Faye and Amelia were subjected to conduct or conditions described in AS 47.10.011 are adequately supported by the record and the superior court did not err in terminating Ann's parental rights.

### B. The Superior Court Did Not Err in Ordering the Termination of Ann's Parental Rights Instead of Guardianship Pursuant to AS 47.10.110.

■ Ann argues that the superior court erred because it did not consider appointing a guardian for the children instead of terminating her parental rights. The superior court was not required to consider the less drastic alternative of guardianship in a termination proceeding. We have previously stated that

> [a]lthough AS 47.10.110 permits a court to appoint a guardian for a child when it appears to the court that such an appointment would be in the child's best interest, AS 47.10.088 does not require that guardianship be considered in termination proceedings, except to the extent that the statute requires the court to order an ar-

---

**18.** As the superior court so plaintively noted in its *Findings and Order*:

> Ms. [Jackson] was still drugging during her latest substance abuse treatment even though she has had more treatment than anyone the

court has ever seen in such cases, has had lots of support, had the incentive of knowing the termination trial would be starting soon and the knowledge that urinalysis tests were being done.

rangement that is in the child's best interest.[19]

In this case, Judge Greene concluded that termination was necessary because of Ann's "history of interfering with the children's placements." This conclusion was amply supported by the testimony of Joanne Simmerman, a social worker with DFYS, who testified that Ann interfered with Faye's foster placement and that Ann's relatives refused placements due to fears that Ann would be disruptive. The superior court did not err in choosing termination, because the significant chance that Ann would interfere with any guardianship justified the termination of Ann's parental rights in the best interests of her children.

## V. CONCLUSION

Because there was substantial evidence that Faye and Amelia were subjected to conduct or conditions described in AS 47.10.011 and the superior court's order terminating Ann's parental rights was supported by the law, we affirm the superior court's order.

---

19. *C.W. v. State, Dep't of Health & Soc. Servs.*, 23 P.3d 52, 57 (Alaska 2001).