NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JENNY S., ) | |
| ) | Supreme Court No. S-15609 |
| Appellant, ) | |
| ) | Superior Court Nos. 3PA-12-00080 and |
| ) | 3PA-12-00081 CN |
| v. ) | |
| ) | MEMORANDUM OPINION |
| STATE OF ALASKA, ) | AND JUDGMENT* |
| DEPARTMENT OF HEALTH & ) | |
| SOCIAL SERVICES, OFFICE OF ) | No. 1528 – February 4, 2015 |
| CHILDREN'S SERVICES ) | |
| ) | |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Eric Smith, Judge.

Appearances: Shelley K. Chaffin, Law Office of Shelley K. Chaffin, Anchorage, for Appellant. Laura Fox, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

## I. INTRODUCTION

A mother was attending a residential substance abuse treatment program when the superior court ordered termination of her parental rights. She argues that,

---

\* Entered under Appellate Rule 214.

rather than ordering termination, the superior court should have placed her two small children in guardianship with her parents until she completed her recovery. We conclude that the superior court gave the possibility of a guardianship appropriate consideration, and did not clearly err when it concluded that termination was in the children's best interest.

## II.    FACTS AND PROCEEDINGS

This appeal involves termination of Jenny's[1] parental rights to Isabelle (born in January 2006) and Vera (born in October 2010). Isabelle's father, Chad, is not involved in this appeal,[2] and Vera's father, Mark, is deceased.

The Office of Children's Services (OCS) became involved with Jenny's family in October 2010 when Vera was born drug positive. That case was closed because the children were living safely in their grandparents' home. In August 2012 OCS filed an emergency petition for adjudication of child in need of aid and for temporary custody after receiving a report that Jenny was arrested for driving under the influence of heroin with Isabelle and Vera in the car. Isabelle and Vera were adjudicated children in need of aid under AS 47.10.011(1), (9), and (10).[3]

In September 2013 OCS filed a petition for termination of the parental rights of Jenny and Chad, alleging in part that Jenny had only minimally engaged in her

---

[1]    Pseudonyms are used to protect the family's privacy.

[2]    The superior court found that Chad abandoned Isabelle, as evidenced by his failure to appear for the termination trial despite notice.

[3]    AS 47.10.011 provides in pertinent part that the trial court may find a child to be a child in need of aid if it finds by a preponderance of the evidence that: (1) the parent has abandoned the child; (9) the parent's conduct subjected the child to neglect; or (10) the parent has been substantially impaired by the addictive or habitual use of an intoxicant.

case plan and had not followed through on any of the recommended treatment and counseling. The petition stated that the children were in the licensed relative home of their grandparents, who had provided them stability throughout their lives. Trial began in February 2014 and, after two continuances, concluded in May 2014.

It is undisputed that Jenny has had a serious substance abuse issue since she was a teenager, with periods of incarceration for felony convictions, probation violations, and other crimes, combined with periods of sobriety and treatment. Jenny's parents have always been the children's primary care-givers when Jenny was unable to care for them. Jenny testified at trial that she once had a two-year period of sobriety, but the murder of her fiancé Mark (Vera's father) precipitated a relapse in March 2012. According to Jenny, she and Mark had been living with her parents and doing well; she was sober and working under her own commercial fishing permit, and the couple had planned to build a home on some land her parents had given them. At the time of trial, Jenny was at a residential treatment center receiving substance abuse treatment and counseling, but she had charges pending for possession of heroin and methamphetamine.

Jenny's mother, Eve, testified that Jenny's children have lived in the family home for most of their lives, and the children considered Eve and her husband as their primary care-givers. Eve stated that she would continue to facilitate visitation between Jenny and her children to maintain their "good bond" as long as Jenny remained clean and sober. Eve testified that OCS asked her to be an adoptive parent but did not ask her to be a legal guardian. She said she would be willing to be either an adoptive parent or a legal guardian, and her approach to caring for the children would be the same either way; she and her husband would do whatever was in the children's best interests.

When Eve was asked if she could see herself seeking to dissolve the guardianship so the children could go back to their mother, she responded that she could see doing that if Jenny showed many years of sustained sobriety and the ability to

function and care for the girls. Eve stated that she initially was unable to tell when Jenny was using drugs, but for the past several years, she could. Eve said she could not tell that Jenny was using drugs when she was pregnant with Vera. Eve has a support system, including her other adult daughter and son, plus extended family to assist with caring for the children.

In addition to hearing testimony from Jenny and Eve, the superior court heard from other witnesses, including OCS representatives Robyn Burns and Thomas Schramm. OCS protective service specialist Burns testified about her interactions with Jenny and the case plan she developed with Jenny after OCS took custody of Isabelle and Vera. Burns stated that Jenny did not begin to comply with the case plan until her incarceration. When Burns was asked why she felt that termination was in the children's best interests, given that they lived with their grandparents, she responded that she had looked into a guardianship but OCS preferred the extra degree of permanency of termination followed by adoption because the children were young and a guardianship could "fairly easily" be undone.

At the time of trial, Schramm was a family services unit supervisor with the Wasilla OCS office. He testified that OCS considered termination rather than guardianship to be in Isabelle's and Vera's best interests because they had been in OCS custody for almost two years, and OCS's general practice was not to seek guardianship for children under age ten because adoption would provide a more secure, protective, and permanent arrangement. Schramm noted that the participants in a guardianship could petition to have the guardianship undone, and he agreed that although he had not met the children, their age and the length of time they had been in the grandparents' care demonstrated their need for the additional stability adoption provided over guardianship. Schramm testified that his opinion was based in part on Jenny's four failed attempts at rehabilitation and his conclusion that her drug use made the children vulnerable to harm.

The superior court found that the children were in need of aid, that Jenny had not remedied the conditions that put her children at risk, and that OCS had made reasonable efforts towards reunification. The only remaining issue in dispute was whether termination (rather than guardianship) was in the children's best interests. The superior court considered the merits of each option, given the children's ages, Jenny's substance abuse history, and her pending felony charges. The court noted that this was not an easy decision, even though the children were doing well with their grandparents and would continue to have contact with their mother if she remained sober.

The court expressed concern that guardianship posed too much uncertainty for these young children; the court recognized that undoing a guardianship is not simple because it requires an evidentiary hearing and a judge's decision, but it is easier to undo than an adoption. The court also was concerned that Jenny's relationship with her parents could fall apart and she might attempt to undo the guardianship, which could get "messy." The court concluded that providing the permanency and certainty of termination followed by adoption was in the children's best interests.

## III.   STANDARD OF REVIEW

Jenny asserts that issues regarding the establishment of a legal guardianship during a termination trial are issues of law. But the issue here is whether termination was in the best interests of the children, which is a factual finding reviewed for clear error.[4]

---

[4]     *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 428 (Alaska 2012) (citing *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1104 (Alaska 2011)). *See also Grace L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 329 P.3d 980, 988 (Alaska 2014) (upholding the superior court's decision that termination rather than guardianship was in the best interests of the children, stating that "[t]he superior court did not commit any clear error when it balanced these factors and reached its final conclusion that termination would be in [the child's] best interests").

"Factual findings are clearly erroneous if review of the entire record leaves us with a definite and firm conviction that a mistake has been made."[5] "Conflicting evidence is generally insufficient to overturn the superior court, and we will not reweigh evidence when the record provides clear support for the superior court's ruling."[6] But whether the superior court's factual findings satisfy the requirements of the child in need of aid statutes is a question of law we review de novo.[7]

## IV.  DISCUSSION

The five points Jenny raises on appeal can be boiled down to one issue — whether the superior court erred in finding that termination of her parental rights, rather than a guardianship, was in the children's best interests.  To terminate a parent's rights, the superior court must find by a preponderance of evidence that termination is in the best interests of the child.[8]  The court may consider the statutory factors listed in AS 47.10.088(b)[9] and any other facts relating to the best interests of the child.[10]  The

---

[5]     *Sherry R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 332 P.3d 1268, 1273 (Alaska 2014) (internal quotation marks omitted) (quoting *Serman B.*, 290 P.3d at 427-28).

[6]     *Id*. (internal quotation marks omitted) (quoting *Sherman B.*, 209 P.3d at 428).

[7]     *S.H. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 42 P.3d 1119, 1122-23 (Alaska 2002).

[8]     *Hannah B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 289 P.3d 924, 933 (Alaska 2012) (citation omitted).

[9]     AS 47.10.088(b) includes:

    (1) the likelihood of returning the child to the parent within
    a reasonable time based on the child's age or needs;

    (2) the amount of effort by the parent to remedy the conduct

                                        (continued...)

court need not "accord a particular weight to any given factor."[11]  "[T]he deference accorded to a superior court's factual findings is particularly appropriate in close cases."[12]

"The law does not require the superior court to consider a guardianship in the context of a termination proceeding, except to the extent that [AS 47.10.088] requires the court to consider the child's best interests."[13]  "The court may reasonably reject a

---

[9](...continued)
> or the conditions in the home;
>
> (3) the harm caused to the child;
>
> (4) the likelihood that the harmful conduct will continue; and
>
> (5) the history of conduct by or conditions created by the parent.

[10]    *See Amy M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 320 P.3d 253, 260-61(Alaska 2013) (citing *Thea G. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 291 P.3d 957, 966 (Alaska 2013); *Judith R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 289 P.3d 896, 901 (Alaska 2012)).

[11]    *Hannah B.*, 289 P.3d at 933 (internal quotation marks and citations omitted).

[12]    *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1260 (Alaska 2010).

[13]    *Grace L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 329 P.3d 980, 987-88 (Alaska 2014) (concluding that the trial court did not commit clear error when it balanced factors such as contact between parent and child with the child's need for stability and protection to reach its final conclusion that termination was in the child's best interest) (citing *Thea G.,* 291 P.3d at 968).

request for guardianship if such a plan would be inconsistent with a child's need for stability and protection."[14]

Jenny argues that the superior court erroneously based its decision on the false notion that termination is required in cases involving children under age ten. Jenny argues that OCS's written policies are contrary to child protection statutes because the policies favor termination over guardianship or other options for children under ten years old. Jenny asserts that OCS's policy is based on the more easily obtainable funds provided by the federal adoption incentives.[15]

We see no evidence that the superior court made its decision based solely on the age of the children. On the other hand, we have noted that permanency and stability play an important role in determining the children's best interests.[16] The

---

[14] *Id.* at 987 (citing *Doug Y. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 243 P.3d 217, 230 (Alaska 2010)). In *Doug Y.* we upheld the trial court's implicit rejection of the father's guardianship proposal because the potential that he might one day be able to change was "not sufficient to suggest, much less prove, that guardianship [wa]s in [the child's] best interest." *Doug Y.*, 243 P.3d at 230. *See also A.J. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 62 P.3d 609, 614 (Alaska 2003) ("The superior court was not required to consider the less drastic alternative of guardianship in a termination proceeding."); *C.W. v. State, Dep't of Health & Soc. Servs.*, 23 P.3d 52, 57 (Alaska 2001) (upholding rejection of proposed guardianship arrangement as a "less restrictive alternative" because AS 47.10.088 does not require that guardianship be considered in termination proceedings, except to the extent that the statute requires the court to order an arrangement that is in the child's best interest").

[15] *See* 42 U.S.C. § 675(1)(F) (2012) (requiring documentation supporting relative guardianship over adoption before a guardian is eligible for federal funds).

[16] *See Barbara P.*, 234 P.3d at 1263-64 (holding that "[t]he superior court properly considered the children's need for permanency, a crucial need for young children" in evaluating the child's best interests); *Debbie G. v. State, Dep't of Health &*

(continued...)

superior court may consider any relevant fact in its decision, including age.[17]  In this case, the record supports the superior court's decision that Jenny's substance abuse history and the children's needs for permanence and stability outweigh the possibility that she may one day resolve her substance abuse issues, such that termination is better for the children than a guardianship.[18]

We likewise find no merit in Jenny's corresponding argument that the superior court erroneously concluded that legal guardianships are more easily dissolved than an adoption.  Even following a permanent guardianship proceeding, the guardian may petition for permission to resign, and any interested person may petition for the guardian's removal.[19]  After proper notice and hearing, the guardianship may then be terminated.[20]  In this case, the superior court did not commit any error by recognizing that these procedures allow a guardianship to be more easily terminated than an adoption.

Jenny also argues that termination should not be ordered unless there is a reason to prevent any continued contact between the child and the parent.  She argues that there is no pattern of abuse or other reason to prevent her contact with the children in this case.  But we recently affirmed a similar decision that guardianship would not

---

[16](...continued)
*Soc. Servs., Office of Children's Servs.*, 132 P.3d 1168, 1171 n.5 (Alaska 2006) ("We have often noted that young children require permanency and stability or risk long-term harm." (internal quotation marks omitted)).

[17]    *See Barbara P.*, 234 P.3d at 1263 (stating that statutory best interests factors are not exclusive).

[18]    *See Doug Y.*, 243 P.3d at 229-30.

[19]    AS 13.26.085(a).

[20]    AS 13.26.085(b).

provide the desired sense of permanency, even though that procedure would more likely have ensured beneficial contact between a mentally ill mother and her child.[21]

Jenny also argues that the superior court did not consider Isabelle and Vera specifically or the particular facts presented at trial. She argues that the superior court instead erroneously considered "generic children" under ten. In support, she cites *Thea G. v. State, Department of Health & Social Services, Office of Children's Services*, wherein the dissenting justice stated that "the court must look at the best interests of the particular children before it."[22] But the record in this case shows the superior court did indeed consider the particular needs of Jenny's children, addressing Jenny's substance abuse problem, her numerous failures at treatment, her pending felony charges, and her testimony regarding her attempts at sobriety and her motivation to succeed.

The court concluded its findings by carefully considering the alternative of a guardianship:

> The kids are very young, but [Isabelle] apparently is somewhat perceptive of what's happening right now since she was aware that adoption was in the potential picture, given the home visit or the home study. As they grow older, they may well want to know what's going on, and with a guardianship, that's going to be a complicated answer, a very complicated answer, and it could lead, as the [guardian ad litem] and the state pointed out, to some expectations that could create difficulties.
>
> Right now, [Jenny] and her folks get along very well. It's all very good. It could fall apart. These things do happen. If they did happen, it would be really messy. If [Jenny] tried to undo a guardianship, there would be a hearing, if the kids

---

[21]   *Grace L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 329 P.3d 980, 987 (Alaska 2014).

[22]   291 P.3d 957, 971 (Alaska 2013) (Carpeneti, J., dissenting).

were old enough, they'd get caught in the middle, they might
have to testify, it would be a mess.

The superior court then concluded that a guardianship would not be in the best interest of the children. This passage shows that the superior court adequately considered the individual needs of the children in making its determination.

We thus conclude that the superior court did not clearly err when it found that termination was in the children's best interest.

## V.    CONCLUSION

We AFFIRM the superior court's order terminating Jenny's parental rights to her daughters Isabelle and Vera.