NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| STEVE K., | ) |
| | ) Supreme Court No. S-17467 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-17-00514 CN |
| v. | ) |
| | ) MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) AND JUDGMENT* |
| OF HEALTH AND SOCIAL SERVICES, | ) |
| OFFICE OF CHILDREN'S SERVICES | ) |
| | ) |
| Appellee. | ) No. 1759 – March 18, 2020 |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric. A. Aarseth, Judge.

Appearances: J. Adam Bartlett, Anchorage, for Appellant. Laura E. Wolff, Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee.

Before: Winfree, Stowers, Maassen, and Carney, Justices. [Bolger, Chief Justice, not participating.]

## I. INTRODUCTION

A father appeals the termination of his parental rights, arguing that the superior court clearly erred when it found that he had abandoned[1] his daughter and

---

\*      Entered under Alaska Appellate Rule 214.

[1]      *See* AS 47.10.011(1) (abandonment); AS 47.10.013(a) (defining abandonment).

neglected[2] her and that his substance abuse had placed her at substantial risk of harm.[3] Because the record supports the superior court's finding that his daughter was a child in need of aid, we affirm the termination of the father's parental rights.

## II.    FACTS AND PROCEEDINGS

### A.    Removal And Emergency Petition

Steve K.[4] is the father of Heather K., who was born in May 2017. Heather's mother is Rita H.[5] In early October 2017 Anchorage police responded to a report that two adults were sleeping in a vehicle with a baby in the back seat. The responding officer found a parked truck; inside was a man slumped over the wheel, a woman asleep in the passenger's seat, and an infant in the back seat. When awakened, the man identified himself as Steve K. The officer believed that Steve was under the influence of substances because he appeared disoriented and slurred his speech, and the officer noticed a smell that he associated with heroin coming from the truck.[6]

After removing Steve from the truck to perform field sobriety tests, the officer saw Steve remove two objects from his pockets and throw them in different directions. The officer handcuffed Steve, placed him in his car, and attempted to find the items Steve had thrown.

The officer found two containers that field-tested positive for heroin and methamphetamine. He then conducted field sobriety tests and arrested Steve. The

---

[2]    *See* AS 47.10.011(9) (neglect).

[3]    *See* AS 47.10.011(10) (substance abuse).

[4]    We use pseudonyms for all family members to protect their privacy.

[5]    In early May 2019 Rita relinquished her parental rights and responsibilities pursuant to AS 47.10.089. She is not participating in this appeal.

[6]    The officer also noted that Rita showed signs of impairment.

officer searched Steve and found over $2,500 that Steve claimed was for rent. Steve was charged with misconduct involving controlled substances in the second degree (possessing heroin and methamphetamine with intent to deliver it) and reckless endangerment of Heather.[7]

The officer took Heather from the truck and placed her in another officer's vehicle. Her clothes were dirty, and she had no jacket and only one sock; her car seat was not buckled in or anchored to the truck. The officer later testified that Heather's diaper was soiled and appeared not to have been changed for some time, and that her face and feet were dirty. The Office of Children's Services (OCS) and Steve's sister were contacted, and both came to the scene. OCS took emergency custody of Heather and placed her with Steve's sister's family.

Two days after assuming emergency custody OCS arranged for a sample of Heather's hair to be tested for drugs; the test was positive for amphetamine, cocaine, and methamphetamine.

## B.    OCS Custody

OCS filed a petition for emergency custody, alleging that Heather was a child in need of aid due to her parents' incarceration, neglect, and substance abuse. A temporary custody hearing was scheduled two days later, but was continued until early November. At the November hearing the parents stipulated to probable cause that

---

[7]      At the time, AS 11.71.030(a)(1) defined misconduct involving controlled substances in the second degree as, among other things, "possess[ing] with intent to . . . deliver . . . one gram or more [of] a schedule IA controlled substance [including heroin or ] . . . 2.5 grams or more [of] a schedule IIA . . . controlled substance [including methamphetamine]." *See* AS 11.71.140(d)(11); AS 11.71.150(e)(2).

AS 11.41.250 defines reckless endangerment as "recklessly engag[ing] in conduct which creates a substantial risk of serious physical injury to another person."

Heather was a child in need of aid under AS 47.10.011(2) (parental incarceration), (9) (neglect), and (10) (substance abuse).

In December, soon after the court granted OCS temporary custody, OCS created case plans for both parents. Because neither parent met with the assigned caseworker, the case plans were created without their input. Each parent's plan required the parent to address substance abuse issues, attend parenting classes, and remain in communication with OCS, as well as to participate in visitation with Heather.

In late December 2017 and throughout January 2018, a second caseworker took over the case and attempted to schedule a case planning meeting with the parents. The caseworker tried but failed to reach Steve, and, after several missed meetings, created a new case plan, again without Steve's participation. Steve finally met with the caseworker in March 2018 to update the case plan. Once again the case plan required Steve to complete a substance abuse assessment, comply with any recommended treatment program, and participate in random urinalysis testing for drugs. Steve was also asked to establish a safe home where Heather could reside and to obtain a mental health assessment and comply with its recommendations. The caseworker referred Steve to a treatment provider for substance abuse and mental health assessments and to another for a random drug testing program.

OCS set up a weekly schedule of supervised visits for Steve and Rita with Heather. Steve's attendance was "somewhat consistent," but the caseworker later testified about his concern that for a majority of the visits he had observed as well as their case planning meetings Steve had been under the influence of substances.

In May 2018 the parents stipulated that Heather was a child in need of aid due to their substance abuse. At a disposition hearing in July the court found that OCS had made reasonable but unsuccessful efforts to reunite the family and that it was in Heather's best interests to grant custody to OCS for a period not to exceed two years.

Steve began to miss visits with Heather in the fall. Of 26 scheduled meetings, he and Rita missed 13. OCS offered to assist Steve with transportation to visits, but he declined. OCS removed Steve and Rita from the visitation schedule in November for missing visits and failing to communicate with OCS.

Steve also failed to work on his case plan's requirements. He did not obtain substance abuse or mental health assessments, attend counseling or parenting classes, or demonstrate that he was staying sober. A caseworker testified that Steve had reported completing an "integrated assessment" at a mental health and substance abuse treatment center but that Steve did not provide documentation. Steve also missed a number of urinalysis appointments and, even after he began to participate in a Suboxone treatment program,[8] repeatedly tested positive for illegal substances when he did provide a sample. Of 11 scheduled drug tests Steve missed 5, and tested positive in the rest. The superior court noted that it "couldn't find one test where [Steve] wasn't positive for at least one of those prohibited items."

Although Steve claimed to have found a parenting class other than the ones recommended by OCS, he was unable to provide any information to OCS and OCS was unable to evaluate whether the program was acceptable.

## C.  Termination

OCS filed a petition to terminate parental rights in late January 2019. The petition alleged that Heather remained a child in need of aid due to abandonment, neglect, and her parents' substance abuse.

---

[8]  Suboxone is an FDA-approved medication for the treatment of heroin or other opoid addiction.

The superior court held a two-day trial on the termination petition in May 2019. OCS presented six witnesses: two police officers and four OCS employees. Steve testified on his own behalf. [9]

The first police officer described his actions and observations when he contacted the family in the parked truck. He described Heather's physical condition and his decision to notify OCS to take emergency custody of Heather.[10]

An OCS supervisor then described OCS's initial involvement and past reports OCS had received related to Heather. The supervisor testified that OCS had been unable to fully investigate past allegations because it had not been able to locate the family. She also discussed Heather's initial drug test that was positive for amphetamine, cocaine, and methamphetamine.

An OCS visitation supervisor testified that Steve had missed half of his scheduled visits since the fall of 2018. She described Steve's behavior and appearance during visits, reporting that at times he was unable to sit still, had a strong body odor, and was more interested in watching OCS employees work than playing with Heather. She also described a visit when Steve did not participate at all; during that visit he was immobile and did not engage with or speak to Heather. A second visitation supervisor testified similarly that Steve would sometimes engage with Heather, but also described a meeting where Steve appeared "tired-looking, slow moving, [and] not really there" and seemed to be "falling asleep while he engage[d] with [Heather]."

Steve's second caseworker also testified that Steve would sometimes be "erratic," "over-talk," and slur his speech, while other times he would struggle to stay

---

[9] The court terminated Rita's parental rights based on her relinquishment.

[10] The second officer testified about an incident not at issue in this appeal.

awake, leading the caseworker to believe that Steve was under the influence of substances for a majority of their meetings.

The second caseworker also described his efforts to work with Steve to complete his case plan and reunite with Heather. He detailed his attempts to create case plans and his difficulty contacting Steve and Rita. The caseworker testified that, after meeting with Steve to develop a case plan, the caseworker was unable to get Steve to work on the goals the case plan set out for him. The caseworker acknowledged that Steve had taken some steps to address his substance abuse issues, such as engaging in Suboxone treatment, but testified that Steve had not maintained sobriety "[f]or any period of time." Because Steve had not changed his behavior and was still struggling with addressing his physical and mental needs, the caseworker believed it was in Heather's best interests for Steve's (and Rita's) parental rights to be terminated.

Steve then testified, acknowledging that his substance abuse had in the past, and could in the present or future, put Heather at risk. But he testified that he had been treating his heroin addiction with Suboxone therapy and that he was trying to remain sober. He admitted "some slips" — such as failing every drug test and testing positive for alcohol, amphetamine, methamphetamine, morphine, and THC — but offered explanations. He blamed a positive morphine result on having smoked his Suboxone out of dirty foil that had morphine residue on it, despite the program requirement that he take the prescribed drug orally in tablet or dissolvable form. And he testified that his doctor encouraged him to drink a glass of wine or beer daily, despite his having had alcohol problems in the past, the danger of combining Suboxone with other drugs, and the fact that use of other substances was a ground for discharge from the program.[11]

---

[11]     Steve's program contract stated that "combination of buprenorphine [the generic name for the main active ingredient in Suboxone] with other mood-altering drugs (continued...)

When questioned about Heather's positive drug test, Steve testified that his use of methamphetamine was not the cause. He testified that he was "beyond anal" about not exposing her to drugs and that he and Rita would take turns using methamphetamine or heroin, with one of them getting high in one room while the other was with Heather on the opposite side of the house. He testified that they would sit next to an open window, keeping Heather 65 to 70 feet away from them with running fans and closed doors in between. The couple would also sometimes try to get a babysitter for Heather on the weekends so that they "could indulge together." He blamed Heather's cocaine exposure on a neighbor who had smoked crack in the house.

The court credited the testimony of the officers and OCS employees, and found that Steve "was not a credible witness." It found his rationalizations for why he was "in compliance with the Suboxone program despite his continuing use of alcohol, marijuana, methamphetamine[], and heroin" particularly incredible.

The court found that Heather continued to be a child in need of aid based on abandonment, neglect, and substance abuse. The court first found that Steve had abandoned Heather by failing to maintain regular visitation,[12] having missed half of the scheduled visits and having not been clean, sober, or mentally present when he did attend. The court also found that Steve had abandoned Heather by failing to participate

---

[11]    (...continued)
(for example: alcohol, tranquilizers, sleeping pills, muscle relaxants) is a dangerous practice. Fatalities have occurred. Use of alcohol or any illicit substance (for example: marijuana, cocaine, methamphetamine) is not allowed while in treatment and may be grounds for discharge from care."

[12]    *See* AS 47.10.011(1) (abandonment); AS 47.10.013(a)(3) (failing "for a period of at least six months to maintain regular visitation with the child").

in a suitable plan or program designed to reunite him with Heather,[13] because he failed to get a substance abuse assessment or pursue mental health counseling despite OCS's referrals and efforts. It also found that Steve had not meaningfully participated in his case plan and that his excuses were not credible. The court found that there was nothing preventing Steve from following through with his case plan but that he still failed to do so "despite knowing that his parental rights [were] at risk."

The court then considered whether Heather remained in need of aid based on neglect and substance abuse, which it discussed together. The court concluded that Heather's positive drug test for amphetamine, cocaine, and methamphetamine was strong evidence of neglect. Because Steve could not separate his own drug use from Heather and allowed other people using drugs to be around her, the court found that Steve allowed Heather to be exposed to drugs, which was "a failure to provide adequate care and control to keep [her] safe." And the court remarked specifically on Steve's description of "smoking methamphetamine on the other side of the house . . . with fans running and windows open," and his "complete[] failur[e] to recognize the danger of exposure and contamination of [Heather] to such a toxic compound." The superior court described his attempt to blame other people for Heather's exposure as "an attempt to rationalize the blame" and a sign that Steve "doesn't see that [the exposure was] really his failure to protect [Heather,] which is neglect."

Additionally, the court described Heather's condition when taken into OCS custody as proof that she was clearly "in need of care." "[S]he was in a[n] unsecured car seat, . . . not dressed properly for . . . Alaska October weather[,] . . . had no coat on, . . . was dirty, both clothes and body, and . . . clearly had a diaper that had not been

---

[13] *See* AS 47.10.011(1) (abandonment); AS 47.10.013(a)(4) (failing "to participate in a suitable plan or program designed to reunite the parent or guardian with the child").

changed in a significant period of time." The court found such evidence demonstrated that Steve and Rita were unavailable to properly care for Heather's basic needs due to their drug usage.

The court also focused on the fact that Steve had been found with methamphetamine, heroin, and over $2,500 in cash. The court stated that with so much cash, there was no reason that Steve could not have provided a hotel room, a proper child's car seat, a bath to wash Heather, clean diapers, adequate food, or proper clothing.

The court rejected Steve's explanations for his failure to address his case plan. And in light of his failure to remain sober or obey the rules of the Suboxone program, the court rejected his argument that he was meaningfully addressing his addictions.

The court found there was clear and convincing evidence that Heather remained a child in need of aid due to Steve's neglect and substance abuse, as well as abandonment. It found that his failure to meet her basic needs and to prevent her from being exposed to dangerous situations created a "substantial risk that [Heather] will be physically and mentally harmed."

The court then found clear and convincing evidence that OCS had made reasonable efforts to reunite the family and had proven by a preponderance of the evidence that it was in Heather's best interests to terminate Steve's parental rights.

Steve appeals the court's finding that Heather was a child in need of aid.

III.  **STANDARD OF REVIEW**

"In a case involving the termination of parental rights, we review a superior court's findings of fact for clear error."[14] A finding is "clearly erroneous if review of the

---

[14] *Annette H. v. Dep't of Health & Soc. Servs, Office of Children's Servs.*, 450 P.3d 259, 265 (Alaska 2019) (quoting *Denny M. v. State, Dep't of Health & Soc. Servs.*,
(continued...)

entire record leaves us with 'a definite and firm conviction that a mistake has been made.' "[15]  "It is not our role to reweigh the evidence or to make credibility determinations,"[16] and "[w]e will not reweigh evidence when the record provides clear support for the trial court's ruling."[17]  "We review for clear error the factual question of '[w]hether a child is a child in need of aid.' "[18]  Only one ground is necessary to uphold a child in need of aid (CINA) finding, and if we determine the record supports one finding, we may affirm that finding without considering the other grounds.[19]

## IV.   DISCUSSION

"In a termination of parental rights case, OCS must prove by clear and convincing evidence: that the child is in need of aid under AS 47.10.011; that the parent has failed to remedy the conduct or conditions placing the child at risk of harm; and that OCS has made reasonable efforts to provide family services designed to enable

---

**14**      (...continued)
*Office of Children's Servs.*, 365 P.3d 345, 348 (Alaska 2016)).

**15**      *Id.* (quoting *Claudio P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 309 P.3d 860, 863 (Alaska 2013)).

**16**      *Charles S. v. Dep't of Health & Soc. Servs., Office of Children's Servs.*, 442 P.3d 780, 793 (Alaska 2019); *see also Hannah B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 289 P.3d 924, 930 (Alaska 2012) ("We defer to a superior court's credibility determinations, particularly when they are based on oral testimony.").

**17**      *Annette H.*, 450 P.3d at 265 (quoting *Claudio P.*, 309 P.3d at 863).

**18**      *Id.* (alteration in original) (quoting *Theresa L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 353 P.3d 831, 837 (Alaska 2015)).

**19**      *Id.* at 265-66 (citing *Payton S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 349 P.3d 162, 169 (Alaska 2015)).

reunification."[20] Additionally OCS must "prove by a preponderance of the evidence that termination of parental rights is in the child's best interests."[21]

Steve argues that OCS failed to prove by clear and convincing evidence that Heather was in need of aid on any of the three grounds alleged in its petition. Steve contends that he took precautions to protect Heather from his drug use and that these precautions show that Heather was not exposed to a substantial risk of harm due to his substance abuse. He claims that as a result there was insufficient evidence that his drug use placed Heather at risk.

OCS responds that just because "Steve made some efforts to protect [Heather] from his and Rita's drug use[, it] does not mean that he did not neglect [her]." OCS also points to Steve's own admission that he and others exposed Heather to drugs, as well as testimony about Heather's condition when OCS took custody, to show that Steve's substance abuse resulted in a substantial risk of harm to Heather.

The superior court did not err by finding clear and convincing evidence that Heather was at substantial risk of harm due to Steve's substance abuse. Steve admitted to smoking drugs while Heather was in the house, and although he argues that he took care to protect Heather by moving 65 to 70 feet away, opening windows. and turning on fans, the superior court noted that was "a prime example of [Steve] completely failing to recognize the danger of exposure and contamination."[22]

Further, Steve testified that others he associated with had used drugs in his home and he blamed Heather's positive drug test on them, failing to recognize that this

---

[20]     *Id.* at 265 (citing AS 47.10.088(a); CINA Rule 18(c)(1)-(2)).

[21]     *Id.* (citing CINA Rule 18(c)(3)).

[22]     *See, e.g.*, *Annette H.*, 450 P.3d at 266 (holding that allowing a child to be exposed to drugs is evidence of neglect).

admission supports the court's finding that he "fail[ed] to protect [Heather]."[23] Steve's own testimony demonstrated that his substance abuse led him to expose Heather to a substantial risk of harm. Combined with Heather's positive hair follicle test for amphetamine, cocaine, and methamphetamine while she was in Steve's care and control, it was not error for the court to hold that Steve's substance abuse resulted in a substantial risk of harm to Heather.[24]

Heather's condition in October 2017 also demonstrates that Steve's conduct created a substantial risk of harm to her. She was found dirty and inadequately dressed in the back seat of a parked truck while Steve was passed out over the wheel. Steve's substance abuse at the time rendered him unable to provide for her basic needs or to protect Heather from harm.[25]

The court did not clearly err by finding that Steve's substance abuse resulted in a significant risk of harm to Heather.[26]

---

[23] *See A.J. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 62 P.3d 609, 614 (Alaska 2003) (holding that substance abuse that impairs judgment such that visitors who pose a substantial risk of harm to children are permitted in a home can support a CINA finding); *see, e.g.*, *Annette H.*, 450 P.3d at 266.

[24] *See Annette H.*, 450 P.3d at 266; *see also A.J.*, 62 P.3d at 614.

[25] *A.J.*, 62 P.3d at 614.

[26] Although we need not review the court's additional findings regarding neglect and abandonment, we note that the same evidence provides clear and convincing evidence that the court did not err by finding Heather was in need of aid due to Steve's neglect. *See Annette H.*, 450 P.3d at 266 (stating that superior court did not clearly err by inferring that child who tested positive for methamphetamine had been exposed while in parents' care, and that conditions in their home led to his exposure, and concluding that court did not err in determining that positive drug test constituted clear and convincing evidence of neglect when there was no indication that drug exposure could have occurred outside of the home).

## V. CONCLUSION

We AFFIRM the termination of Steve's parental rights.