NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| GINA T., | ) |
| | ) Supreme Court No. S-18115 |
| Appellant, | ) |
| | ) Superior Court No. 4FA-18-00193 CN |
| v. | ) |
| | ) MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, | ) |
| OFFICE OF CHILDREN'S SERVICES, | ) No. 1885 – March 23, 2022 |
| | ) |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Thomas I. Temple, Judge.

Appearances: Sharon Barr, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Appellant. Ryan A. Schmidt and Jessica M. Alloway, Assistant Attorneys General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee. Nikole V. Schick, Assistant Public Advocate, Fairbanks, and James Stinson, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I. INTRODUCTION

A mother appeals the termination of her parental rights to her Indian child, arguing that the superior court erred by finding that termination of her parental rights,

---

\* Entered under Alaska Appellate Rule 214.

as opposed to guardianship, was in her child's best interests. We disagree and affirm the termination order.

## II. BACKGROUND

Gina[1] and her son Theo[2] tested positive for methamphetamine when he was born in September 2018. The Office of Children's Services (OCS) was granted emergency custody, and Theo has remained in its custody. Theo has serious physical and developmental challenges, including a history of seizures. He was temporarily placed with Gina's grandparents until OCS moved him to the care of Gina's aunt.

Gina acknowledges that her initial engagement with OCS was insufficient. She completed a substance abuse assessment but alleged that she did not pursue recommended treatment because the agency which performed the assessment misplaced it. She eventually completed a second assessment, but she missed all of the recommended urinalysis (UA) appointments. Gina maintained only sporadic contact with the assigned OCS caseworker. After OCS recommended grief counseling, Gina attended only a single session because she felt uncomfortable knowing many of the other participants. The assigned caseworker drove Gina to other service providers to pick up applications, but Gina did not follow up or participate in services.

In December 2020 Gina was arrested and charged with several felonies. She was released to the third-party custody of her mother in January and required to check in daily with a pretrial services officer and provide random UAs. Gina remained on pretrial release through the termination trial; she had been sober for almost 4 months and was 13 weeks pregnant.

---

[1]    We use pseudonyms to protect the family's privacy.

[2]    Theo is an Indian child as defined by the Indian Child Welfare Act (ICWA). *See* 25 U.S.C. § 1903(4) (defining "Indian child").

**B. Proceedings**

A termination trial was held over three days in March 2021. Two OCS caseworkers testified. The first caseworker detailed her difficulty contacting Gina after she was released from the hospital following Theo's birth. She testified that she obtained funding for additional assessments for Gina, made appointments on Gina's behalf, drove Gina to apply for services, offered Gina taxi and bus vouchers, and attempted to maintain contact with her. The caseworker testified that Gina rarely followed up with service providers, skipped all of her UA appointments, and missed 11 out of 23 scheduled visits with Theo. She described her contact with Gina as "sporadic and unpredictable." The caseworker testified that there "was never . . . consistent . . . engagement" by Gina, but that Gina was always truthful about her drug use.

The caseworker testified that Gina was generally cooperative when OCS sought her consent for Theo's medical treatment, but she recounted one incident in which Theo had to be medivaced because he was suffering from seizures and OCS was unable to reach Gina to obtain her parental consent for some time.

The second caseworker testified that Gina had been out of contact with OCS and not receiving any services in the months leading up to her arrest. She testified that after Gina was released, she informed Gina that OCS would delay termination if Gina entered a long-term inpatient substance abuse treatment program where she could have Theo with her. She said that Gina declined because she wanted to go to a shorter program with another provider. The caseworker also noted that Gina was open about her drug use.

OCS called Gina's substance abuse counselor as an expert witness. Like the caseworkers, the counselor testified that Gina was honest about her drug use. She testified that Gina still needed inpatient treatment, that she would face a long road to recovery, and that her chance of a relapse was "extremely high." But she also

acknowledged that Gina's recent sobriety was a "big deal." The counselor described Gina as being in "early partial remission" and explained that full remission required a year of sobriety.

OCS also called a developmental specialist as an expert witness. She testified that Theo has been diagnosed with optic nerve hypoplasia, brain cysts, and microcephalus, and, at two and a half years old, he was still unable to walk unassisted or communicate verbally. She detailed the significant special education and therapeutic services Theo will need — many of which were not located in the same city as his foster home. She also testified that Theo's special needs, especially his limited sight, increased his need for a consistent environment and caregiver. The expert noted that Gina had never accompanied Theo to one of his appointments.

OCS also presented an expert in child welfare who testified that it was in Theo's best interest to remain permanently with Gina's aunt because of his special need for stability and the uncertainty surrounding Gina's future. She also stated that she "[did]n't know that . . . [a guardianship would be] a good . . . solution" for Theo.

OCS presented a cultural expert from Theo's tribe.[3] That expert testified that the tribe had initially supported a guardianship with Gina's aunt, but had more recently decided that termination was in Theo's best interest.

Gina testified, and conceded that she had not worked with OCS to regain custody of Theo until after she was arrested in December. She testified that she had not worked to get Theo back because she knew she "was not fit." She described the progress she had made since her arrest: she had been sober for four months; she completed a third substance abuse assessment, as well as a behavioral health assessment; and she had been

---

[3]    *See* 25 U.S.C. § 1912(f) (requiring expert testimony in ICWA cases); 25 C.F.R. § 23.122 (2020) (describing qualifications for expertise).

referred to a residential treatment center. Gina testified that she checked with the treatment center weekly to see where she was on their wait list. She also testified that she was 13 weeks pregnant, recently started working at a restaurant, and regularly helped her mother babysit Theo.

Gina agreed that she was not ready to care for Theo and that it was in his best interests to remain with her aunt. And she testified that she would be comfortable with her aunt having a guardianship over Theo "right now." Gina testified that if her aunt had any health problems she wanted to be "able to take [Theo] back through guardianship."

On cross-examination Gina confirmed that she wanted a guardianship so that she would have an opportunity to get Theo back. Gina did not respond directly when she was asked whether she was concerned that taking Theo from her aunt "was going to be disruptive" for Theo, or whether "it . . . bother[ed her]" that she would be taking Theo from the home he had known for most of his life.

Gina's aunt testified after Gina. The aunt testified about Theo's daily needs and the progress he had made under her care. On cross-examination she agreed with Gina's lawyer that she would be "open to a guardianship or adoption" for Theo.

The parties submitted closing arguments after trial. The superior court issued a written order terminating parental rights in June. The superior court found that Theo continued to be a child in need of aid and that Gina had failed to remedy the conditions that led to Theo's removal.[4] The court also found that OCS made active efforts to reunite Gina and Theo and that returning Theo to Gina's care would likely

---

[4] *See* AS 47.10.088 (laying out criteria for involuntary termination of parental rights).

result in serious emotional or physical harm to him.[5] Finally the court found by a preponderance of the evidence that terminating Gina's parental rights was in Theo's best interests. Although the court commended Gina's recent sobriety, it also considered her long history of substance abuse, the length and difficulty of recovery from heroin and methamphetamine, her high risk of relapsing, and that staying out of jail could be the "primary motivation for [her] sobriety."

The court also considered Theo's extensive special needs. It found that Gina did not know how to care for him and "all of his medical and educational needs." In contrast, the court found that "[Theo] has bonded with [Gina's aunt] and she is experienced in dealing with all of his medical and educational needs."

Gina appeals the termination of her parental rights, arguing that a guardianship would have been in Theo's best interests.

## III.   STANDARD OF REVIEW

"We review the factual determination whether termination of parental rights is in a child's best interests for clear error."[6] Findings are clearly erroneous only if, after reviewing the record in the light most favorable to the prevailing party, we are left with a "definite and firm conviction that a mistake has been made."[7] When reviewing factual findings "we ordinarily will not overturn a trial court's finding based on conflicting

---

[5]   *See* 25 U.S.C. § 1912 (laying out additional criteria for terminating parental rights to Indian children).

[6]   *Dena M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 442 P.3d 755, 760 (Alaska 2019).

[7]   *Brynna B. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 88 P.3d 527, 529 (Alaska 2004) (quoting *A.B. v. State, Dep't of Health & Soc. Servs.*, 7 P.3d 946, 950 (Alaska 2000)).

evidence,"[8] and "[w]e will not reweigh evidence when the record provides clear support for the trial court's ruling."[9]  It "is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence."[10]

## IV.  DISCUSSION

"Before terminating parental rights to a child, the superior court must find by a preponderance of the evidence that termination is in the child's best interests."[11] The superior court has considerable discretion in light of the facts and circumstances of each case to determine the child's best interests.[12]  In addition to the factors specifically enumerated in AS 47.10.088(b),[13] the superior "court may consider any fact relating to

---

[8]    *Martin N. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 79 P.3d 50, 53 (Alaska 2003) (citing *In re Friedman*, 23 P.3d 620, 625 (Alaska 2001)).

[9]    *D.M. v. State, Div. of Fam. & Youth Servs.*, 995 P.2d 205, 214 (Alaska 2000).

[10]    *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001) (quoting *Knutson v. Knutson*, 973 P.2d 596, 599-600 (Alaska 1999)).

[11]    *See Bob S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 400 P.3d 99, 109 (Alaska 2017) (quoting *Chloe W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 336 P.3d 1258, 1270-71 (Alaska 2014)).

[12]    *See* AS 47.10.088(b) (permitting superior court to rely on any fact to determine best interest by preponderance of evidence); *see also Chloe W.*, 336 P.3d at 1271 (detailing court's discretion to determine best interests).

[13]    AS 47.10.088(b) ("(1) [T]he likelihood of returning the child to the parent within a reasonable time based on the child's age or needs; (2) the amount of effort by the parent to remedy the conduct or the conditions in the home; (3) the harm caused to the child; (4) the likelihood that the harmful conduct will continue; and (5) the history of conduct by or conditions created by the parent.").

the best interests of the child."[14]

Alaska Statute 47.10.110 "*permits* a court to appoint a guardian for a child."[15] But the superior court is only required to consider guardianship "to the extent that the statute requires the court to order an arrangement that is in the child's best interest."[16] The superior court "may reasonably reject a request for guardianship if such a plan would be inconsistent with a child's need for stability and protection."[17] And even if a guardianship is in a child's best interests, it does not necessarily follow that the parent must also retain residual parental rights.[18]

The alternative of guardianship must be "properly raised at trial."[19] It is not enough to "suggest[] that guardianship should be considered."[20] Because guardianship and termination are not mutually exclusive, a parent must at least explain how the child would benefit both by a guardianship and by the parent retaining residual parental

---

[14]    *Id.*

[15]    *C.W. v. State, Dep't of Health & Soc. Servs.*, 23 P.3d 52, 57 (Alaska 2001) (emphasis added).

[16]    *Id.*

[17]    *Dena M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 442 P.3d 755, 762 (Alaska 2019) (quoting *Grace L. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 329 P.3d 980, 987 (Alaska 2014)).

[18]    *See id.* at 762-63 (quoting *Fiona P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, No. S-16301, 2017 WL 729765, at *2 (Alaska Feb. 22, 2017)); *see also* AS 47.10.084(c) (detailing the residual rights a parent may retain in a guardianship).

[19]    *C.W.*, 23 P.3d at 57.

[20]    *Id.*

rights.[21] If the superior court has implicitly considered and rejected the evidence,[22] we will not disturb those findings except when there is clear error.[23]

Gina failed to properly raise the issue.[24] Her own limited testimony about guardianship made clear that she proposed it primarily because it would allow her the opportunity to reunify with Theo, not because she believed it was in Theo's best interests.[25] She offered no evidence that guardianship would be in Theo's best interests. OCS, the guardian ad litem, and Theo's tribe, on the other hand, presented evidence and argued that termination, not guardianship, was in Theo's best interests. And her aunt's brief acknowledgment that she would be "open" to either option is far from sufficient evidence in support of a guardianship.

Even though Gina did not properly raise the issue, the superior court

---

**21**     *See id.*; *Dena M.*, 442 P.3d at 762; *Christopher D. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, No. S-11006, 2004 WL 243556, at *3 (Alaska Feb. 11, 2004).

**22**     *See, e.g.*, *Dena M.*, 442 P.3d at 762 n.19 (first citing *Doug Y. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 243 P.3d 217, 229-30 (Alaska 2010); and then citing *C.W.*, 23 P.3d at 57); *see also Donald L. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, No. S-17344, 2019 WL 5588815, at *4 (Alaska Oct. 30, 2019) ("[T]he court need not make explicit findings regarding guardianship.").

**23**     *Dena M.*, 442 P.3d at 762.

**24**     *Cf. Fiona P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, No. S-16301, 2017 WL 729765 at *4 (Alaska Feb. 22, 2017) (Carney, J., dissenting) (concluding that guardianship was properly raised where mother presented evidence that children were placed with relatives who planned to raise them, that guardianships are culturally appropriate, that OCS had publically endorsed guardianships, and where adoption would have been premature).

**25**     *Pravat P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 249 P.3d 264, 274 (Alaska 2011) ("[I]t is the best interests of the child, not the parent, that are paramount.").

nonetheless considered and rejected Gina's request that it order guardianship rather than termination of her parental rights. The "record provides clear support for the trial court's ruling."[26] The superior court did not err by ordering termination of parental rights instead of a guardianship with Gina's aunt.

## V. CONCLUSION

We AFFIRM the termination of Gina's parental rights.

---

[26] *D.M. v. State, Div. of Fam. & Youth Servs.*, 995 P.2d 205, 214 (Alaska 2000).