NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

|  |  |  |
|---|---|---|
| KIA H., | ) | |
| | ) | Supreme Court No. S-18537 |
| Appellant, | ) | |
| | ) | Superior Court No. 3KN-19-00038 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) | AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, | ) | |
| OFFICE OF CHILDREN'S | ) | No. 1965 – May 17, 2023 |
| SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Jennifer K. Wells, Judge.

Appearances: Mary Bullis, Anchorage, and Samantha Cherot, Public Defender, Alaska Public Defender Agency, Anchorage, for Appellant. Robert Kutchin, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee.

Before: Maassen, Chief Justice, Carney, Borghesan, and Henderson, Justices. [Pate, Justice, not participating.]

## I. INTRODUCTION

A mother appeals the termination of her parental rights. She argues that the superior court erred by not considering guardianship in lieu of termination when

---

\* Entered under Alaska Appellate Rule 214.

weighing the child's best interests, but she did not make that argument at trial. The court did not err by not sua sponte considering guardianship as an alternative to termination. And its finding that termination was in the child's best interests is not clearly wrong. We therefore affirm the termination order.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Kia[1] and her husband had a daughter, Maria, in 2014. Maria's father died four years later while in jail on charges of domestic violence against Kia. OCS became involved with the family shortly afterward. An OCS caseworker visited the home where Kia was allegedly living and reported that it had no electricity or water and had a variety of safety hazards. The caseworker also reported that it appeared Maria was staying at her paternal grandmother's residence on the same property.

In May 2019 Maria's paternal grandmother sought a long-term protective order on behalf of Maria against Kia, but the petition was denied. Maria had been staying with her grandmother, but after Kia learned of the unsuccessful protective order petition, she called law enforcement to help her retrieve Maria. Maria stayed with Kia until the following weekend, when Kia arranged for Maria to stay with her grandmother again. When the grandmother was about to return Maria to Kia's care a few days later, OCS became involved out of concern that Kia was then living, according to OCS, at a "flop house for methamphetamine addicts." OCS showed up at the custody exchange and took custody of Maria. The caseworker noted that Kia appeared to be under the influence of methamphetamine.

The next day OCS filed an emergency petition for temporary custody. The superior court found that probable cause existed to believe Maria was a child in need of aid and committed her to OCS's temporary custody.

---

[1]    We use pseudonyms to protect the parties' privacy.

After Maria was taken into custody, an OCS caseworker made a case plan for Kia. OCS set up transportation assistance for Kia and made numerous referrals for drug testing, a behavioral health assessment, and integrated assessments to determine the type of treatment she might need. According to OCS Kia repeatedly failed to participate in drug testing or assessments and repeatedly disclosed recent drug use to caseworkers.

OCS coordinated supervised visitation between Maria and Kia. OCS workers testified that early on Kia missed about half her visits with Maria, which upset the child. OCS workers testified that later on Kia attended visits more consistently.

In February 2021 Maria was transferred from a non-relative foster home to the home of her paternal aunt and uncle.

## B. Proceedings

OCS filed a petition to terminate Kia's parental rights, alleging that Maria was a child in need of aid due to abandonment, neglect, and harm from substance abuse.[2] A multi-day trial was held.

At trial an OCS caseworker testified that Kia's engagement with her case plan had been "inconsistent" and that she frequently refused to participate in drug testing or assessments. Another caseworker testified that Kia made little progress in other areas of her case plan and did not have housing or employment for a significant amount of time. Kia testified that she had recently made progress on her case plan by finding housing and employment, scheduling an integrated assessment, and staying sober for the five months preceding trial.

The superior court found that OCS had shown clear and convincing evidence of abandonment and substance abuse, but not neglect. The court found that Kia's substance abuse had impaired her ability to parent and left her unable to meet

---

[2] AS 47.10.011(1), (9), (10).

Maria's needs. Instead Kia had relied on Maria's paternal grandmother to parent Maria. The court found that Kia had "not made a meaningful effort to engage in her case plan — particularly the components related to substance abuse" and had "disregarded every referral for testing and assessment/treatment for three years." The court acknowledged Kia's testimony that she had recently completed an integrated assessment and maintained sobriety for five months, but emphasized that those steps had not been corroborated and, in any event, occurred almost three years after OCS took custody of Maria. The court found that for three years Kia had been unable to hold a job or find a place to live due to her addiction and instead had been living in various temporary sites, sometimes with people using methamphetamine. Had Kia not been able to rely on Maria's grandmother for help, the court found, Maria would have been placed in harm's way. The court found by clear and convincing evidence that Kia had not remedied these conditions.

The court also determined by clear and convincing evidence that OCS had made reasonable efforts to reunify Kia and Maria, pointing to the case plan and referrals OCS made for Kia and Kia's unwillingness to participate.[3]

Finally the court found by a preponderance of the evidence that termination of Kia's parental rights was in Maria's best interests.[4] It found that Kia had been unable to provide for Maria's needs and "there [was] no reason to think [Kia] ha[d] substantially improved and certainly not in a timely way." Noting that the case had been pending for three years and that OCS had a permanent plan for Maria to be adopted by her aunt and uncle, with whom she was happily living, the court found that Maria "need[ed] stability and certainty." It therefore ordered termination of Kia's parental rights.

---

[3]     CINA Rule 18(c)(2); AS 47.10.086(a).

[4]     CINA Rule 18(c)(3).

Kia appeals.

## III.   DISCUSSION

### A.   The Superior Court Did Not Err By Not Sua Sponte Considering Guardianship As An Alternative To Termination.

The superior court may not terminate parental rights unless it finds that doing so is in the child's best interests.[5]   Kia argues that the court should have considered guardianship in lieu of termination when weighing whether termination was in Maria's best interests.   But Kia did not make that argument to the trial court.   The argument is therefore waived.

"Alaska Statute 47.10.110 allows, but does not require, the superior court to appoint a guardian in a CINA proceeding" if guardianship would promote the child's welfare.[6]   In *C.W. v. State, Department of Health & Social Services* we stated that the CINA statutes "do[] not require that guardianship be considered in termination proceedings, except to the extent that the statute requires the court to order an arrangement that is in the child's best interest."[7]   Then in *Hannah B. v. State, Department of Health & Social Services, Office of Children's Services* we clarified that "the superior court is not obligated to sua sponte consider the alternative of guardianship in the context of a termination proceeding" if the parent fails to raise it at the termination trial.[8]

At trial Kia did not argue that the superior court should consider guardianship as an alternative to termination of her parental rights.   Although she briefly

---

[5]   AS 47.10.088(c); CINA Rule 18(c)(3).

[6]   *Dena M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs*., 442 P.3d 755, 762 (Alaska 2019).

[7]   23 P.3d 52, 57 (Alaska 2001).

[8]   289 P.3d 924, 935 n.58 (Alaska 2012) (citing *A.J. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 62 P.3d 609, 614 (Alaska 2003)).

questioned a caseworker about why OCS did not explore guardianship,[9] she concedes that this did not amount to asking the court to consider the guardianship argument. Nevertheless, on appeal, Kia argues that the superior court should have considered guardianship given the specific facts of her case, citing *Matthew B. v. State, Department of Health & Social Services, Office of Children's Services*[10] and *Gina T. v. State, Department of Health and Social Services, Office of Children's Services*.[11] Neither of these cases supports her argument. In each case the superior court expressly considered the alternative of guardianship, and we reviewed the court's decisions on the merits, but we did not hold that the superior court *must* consider guardianship if not asked to do so.[12] The superior court did not err by not sua sponte considering guardianship.

### B. The Superior Court Did Not Clearly Err When It Found That Termination Of Kia's Parental Rights Was In Maria's Best Interests.

Alternatively Kia challenges the superior court's finding that termination was in Maria's best interests. Alaska Statute 47.10.088(b) describes factors that provide a "logical beginning" for the superior court to decide whether terminating parental

---

[9] Kia's attorney asked an OCS worker whether guardianship had been "explored" in this case and if anyone asked Maria's paternal aunt and uncle if they would be open to guardianship. The worker explained it had not been explored because OCS policy is to pursue adoption as the preferred goal for children "who cannot return home."

[10] No. S-11522, 2005 WL 628809 (Alaska Mar. 16, 2005).

[11] No. S-18115, 2022 WL 854680 (Alaska Mar. 23, 2022).

[12] *See Matthew B.*, 2005 WL 628809, at *4 (observing that superior court considered and rejected option of guardianship at trial and affirming its best interests decision); *Gina T.*, 2022 WL 854680, at *4 (explaining that parent failed to properly raise guardianship at trial and holding that the superior court did not clearly err when it still "considered and rejected" guardianship in favor of termination).

rights is in the child's best interests.[13]  The superior court need not expressly discuss these factors when reaching its termination decision, as long as it makes factual findings that are relevant to the child's best interests.[14]  The superior court may consider "any fact relating to the best interests of the child in its best-interests analysis."[15]  But it "is not required to consider or give particular weight to any specific factor, including a parent's desire to parent or her love for the child."[16]  Best interests findings are factual findings reviewed for clear error.[17]

The superior court made numerous factual findings in support of its best interests finding.  It found that Kia's drug use "had an effect on her mental health, as well as her ability to work and find stable housing"; the drug use "appear[ed] to have continued unabated" after OCS took custody of Maria; and by the end of trial Kia had not participated in drug testing or engaged in treatment.[18]  It also found that Kia was

---

[13]  *Thea G. v. State, Dep't of Health & Soc. Servs., Off. Of Child.'s Servs.*, 291 P.3d 957, 966 (Alaska 2013), abrogated on other grounds by *State v. Cissy A.*, 513 P.3d 999 (Alaska 2022); AS 47.10.088(b) (listing factors related to child's best interests that court may consider when deciding whether parent has remedied conduct or conditions placing child at risk of harm, including "(1) the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs; (2) the amount of effort by the parent to remedy the conduct or the conditions in the home; (3) the harm caused to the child; (4) the likelihood that the harmful conduct will continue; and (5) the history of conduct by or conditions created by the parent.").

[14]  *Joy B. v. State*, Dep't of Health & Soc. Servs., Off. of Child.'s Servs., 382 P.3d 1154, 1167-68 (Alaska 2016).

[15]  *Hannah B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 289 P.3d 924, 932 (Alaska 2012).

[16]  *Chloe W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 336 P.3d 1258, 1271 (Alaska 2014).

[17]  *Hannah B.*, 289 P.3d at 930.

[18]  One OCS worker testified that Kia participated in drug testing for "a brief time."  Therefore the court's finding that Kia had not engaged in a "single drug test" is

sometimes inconsistent with visitation, which caused Maria distress. It found that Kia had not been able to meet Maria's needs when the case began, that Kia had not "substantially improved and certainly not in a timely way," and that Maria needed "stability and certainty."

These factual findings are directly related to the statutory best interests factors noted above. For example, the findings that Kia had been inconsistent with visitation and suffered from drug addiction (which impacted her ability to find work and housing) relate to "harm caused to the child."[19] The finding that Kia had not engaged in treatment or with her case plan in a meaningful way relates to "the amount of effort by the parent to remedy the conduct or the conditions in the home."[20] The finding that Kia had not "substantially improved and certainly not in a timely way" relates to the "likelihood of returning the child to the parent within a reasonable time."[21] And all these findings relate to "the history of conduct by or conditions created by the parent."[22] Under the circumstances of this case, the court's findings add up to a comprehensive assessment of Maria's best interests.

Kia urges us to reweigh the evidence presented before the superior court, but we are not convinced that the court clearly erred by giving determinative weight to the findings described above. We generally will not reweigh conflicting evidence.[23]

---

likely wrong. But this small error, which Kia does not challenge, does not undermine the court's broader finding that Kia did not remedy her substance abuse or its overall finding that termination would be in Maria's best interests.

[19] AS 47.10.088(b)(3).

[20] AS 47.10.088(b)(2).

[21] AS 47.10.088(b)(1).

[22] AS 47.10.088(b)(5).

[23] *Tessa M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 182 P.3d 1110, 1114 (Alaska 2008) ("[I]t is the function of the trial court, not of this

Kia asserts that the superior court failed to recognize that the animosity between her and Maria's paternal relatives will harm her bond with the child. But the court is not required to give the parent-child bond greater weight than any of its other findings.[24] Kia also argues that the record shows that Maria was well cared for when she was taken into OCS custody. But the court found that, were it not for Maria's paternal grandmother, Maria would likely have been in harm's way in Kia's home. Kia also emphasizes her own testimony about progress by the time of trial, such as a new job, stable housing, and five months' sobriety. The court viewed this testimony skeptically, noting that these assertions were not corroborated, and found that Kia had not remedied the problems that led to Maria coming into OCS custody. We defer to the trial court's credibility determinations, especially when based on oral testimony.[25] In light of the entire record, we do not see clear error in the court's finding that termination of Kia's parental rights was in Maria's best interests.

## IV.  CONCLUSION

We AFFIRM the superior court's order terminating Kia's parental rights.

---

court, to judge witnesses' credibility and to weigh conflicting evidence." (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001))).

[24]     *Chloe W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 336 P.3d 1258, 1271 (Alaska 2014).

[25]     *Wee v. Eggener*, 225 P.3d 1120, 1124 (Alaska 2010).