NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JADE B., | ) |
| | ) Supreme Court No. S-18682 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-21-00027 CN |
| v. | ) |
| | ) MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) AND JUDGMENT* |
| OF FAMILY & COMMUNITY | ) |
| SERVICES, OFFICE OF | ) No. 2010 – January 31, 2024 |
| CHILDREN'S SERVICES, | ) |
| | ) |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Mary Bullis, contract attorney for the Public Defender Agency, and Samantha Cherot, Public Defender, Anchorage, for Appellant. Katherine Demarest, Assistant Attorney General, Anchorage, and Treg Taylor, Attorney General, Juneau, for Appellee. Paul F. McDermott, Assistant Public Advocate, and James Stinson, Public Advocate, Office of Public Advocacy, Anchorage, for Guardian Ad Litem.

Before: Carney, Borghesan, and Henderson, Justices. [Maassen, Chief Justice, and Pate, Justice, not participating.]

## I. INTRODUCTION

---

\* Entered under Alaska Appellate Rule 214.

The Office of Children's Services (OCS) petitioned to terminate a mother's parental rights to her teenage child. At trial the mother argued that instead of terminating her parental rights, the court should appoint a legal guardian for the child. The superior court issued an order terminating the mother's parental rights. The court found that the child had been in OCS custody for over two years, the mother was unlikely to change her behavior within a reasonable time, the parent-child relationship had been destroyed, and the child would be best served by being adopted. The court did not expressly mention guardianship. On appeal the mother argues that the failure to do so was legal error and that the court's factual finding that termination was in the child's best interests was mistaken. We see no error. The court implicitly rejected the guardianship proposal in finding that adoption was in the child's best interests. And this finding was not clearly wrong in light of the record. Therefore we affirm the termination order.

## II. FACTS AND PROCEEDINGS

### A. Background Facts

At the time of these proceedings, Alexandria was a teenager living with her mother, Jade B., and her stepfather, Jade's husband Daniel.[1] Alexandria's biological father, Logan, had been incarcerated for most of her life.[2]

Jade has struggled with substance abuse for a long time. Jade was sober for eleven years prior to relapsing on heroin and cocaine in 2020. She participated in several drug treatment programs, including three detox programs in 2020. She left all three of these programs early. Jade's parental rights to her older three children were

---

[1] We use pseudonyms to protect the parties' privacy.

[2] Logan tentatively agreed to relinquish his parental rights before the end of the termination trial. According to OCS, Logan relinquished his rights in June 2023. He did not participate in this appeal.

terminated over a decade ago. Two of these children were adopted by their foster parent. She eventually regained parental rights to the other child.

Alexandria has exhibited self-harming behaviors since age eleven or twelve, including cutting and suicide attempts. When Jade first learned of these behaviors, she sought counseling for Alexandria. Alexandria also suffered several instances of sexual abuse while under Jade's care.

## B.    Removal

In December 2020 Jade began a seven-day detox program. While Jade was at the program, Alexandria, thirteen at the time, cut herself badly and told Daniel that she wanted to die. When Jade learned that Daniel, as a stepparent, lacked authority to consent to Alexandria's treatment, Jade left detox early to bring Alexandria to the hospital.

Jade brought Alexandria to Providence Hospital, and Alexandria was later transferred to Crisis Recovery Center (CRC). During Alexandria's stay at CRC, Jade became unhappy with Alexandria's treatment plan. CRC staff then contacted OCS with concerns that Jade would discharge Alexandria against CRC's medical advice.

As a result of these concerns and Alexandria's accounts of domestic violence and substance abuse, OCS filed an emergency petition for temporary custody of Alexandria. The petition was granted.

Alexandria was transferred to North Star Hospital. She received care at North Star for nearly two months before being discharged to Alaska Child and Family Services for additional mental health care.

In August 2021 OCS placed Alexandria in foster care with Elizabeth. Jade had recommended Elizabeth as a temporary placement. Elizabeth's daughter and Alexandria were already close friends prior to OCS involvement.

Meanwhile, Jade underwent an integrated assessment as a part of her case plan. The assessor diagnosed her with severe opioid use disorder and severe stimulant

use disorder. The assessor recommended residential treatment. Jade did not enroll herself in residential treatment. She also failed to attend many urinalysis appointments prescribed in her case plan, and at others she tested positive for a variety of illicit substances. In May 2022 Jade was convicted of misdemeanor assault.

Due to Jade's lack of progress on her case plan, in September 2022 OCS petitioned to terminate her parental rights.

### C.    The Termination Proceedings

A termination trial was held over the course of three days in December 2022 and February 2023. Relevant to this appeal, the court heard evidence pertaining to Alexandria's interactions with her mother, her mental health, her contacts with other relatives, and the possibility of guardianship.

The court heard evidence about Alexandria's contact with Jade while in Elizabeth's care. Initially, this visitation was often in person and supervised by Elizabeth. Elizabeth testified that at first the visits were appropriate, but over time Jade became emotionally abusive towards Alexandria. After one troubling incident, Elizabeth stopped facilitating in-person visitation, but phone visitation continued. Alexandria's therapist eventually recommended that Alexandria not have contact with Jade. After this recommendation, there was a break in phone visitation. Even after conversations resumed, Elizabeth testified that Jade pushed Alexandria's boundaries by asking for additional visitation.

The court heard evidence about how Alexandria's interactions with Jade and Daniel impacted Alexandria's mental health. Alexandria was diagnosed with depression, anxiety, post-traumatic stress disorder, bipolar disorder, and other mental health disorders prior to her foster placement. At trial her therapist testified that Alexandria needs to be around people who are consistent, stable, healthy, supportive, and sober, and that this "possibly means not involving any contact with mom." The therapist further testified that Jade can be a "trigger" that causes Alexandria to be "very,

very down." The therapist also reported having heard Alexandria express a preference for adoption. The assigned OCS caseworker also testified that communications and interactions with Jade have negatively impacted Alexandria's mental wellbeing. Elizabeth described a similar dynamic. At the conclusion of the hearings, Alexandria's attorney stated that for Alexandria "the very thought of having custody — of being with her mother again is a source of extreme stress to her."

The court also heard about Alexandria's close relationship with other relatives. She remains particularly close with her maternal grandmother. Elizabeth testified that, under her care, Alexandria spoke with her grandparents, stepbrother, or cousin over the phone on "close to a daily basis." She testified that her family visited Alexandria's grandmother "more than a couple times a month," and that Alexandria often spent the night with her grandparents.

At trial Jade argued that the court should appoint Elizabeth to be Alexandria's legal guardian instead of terminating Jade's parental rights. Jade asserted that she needed "time" and a "real chance" to show her daughter that she could be a good parent.

Jade's attorney questioned Elizabeth regarding earlier conversations with OCS about the possibility of a guardianship. Elizabeth testified that when those conversations occurred it seemed like Jade was "doing better," but when Jade subsequently "backslid" Alexandria was no longer comfortable with the idea of a guardianship. Elizabeth testified that she would support a relationship between Jade and Alexandria if Jade remedied her substance abuse and other underlying problems.

Jade's attorney also questioned the caseworker about guardianship. The caseworker testified that OCS had considered a guardianship but that Alexandria did not like this option. She testified that Alexandria's wishes made "a big difference" in the determination. She also testified that guardianship was a less attractive option because it would permit Jade to "go to the courts and try and fight for the guardianship

to be dissolved." Because of these considerations, the caseworker testified that "the permanent goal of adoption is in [Alexandria's] best interests." She noted that guardianship can cause "lingering anxiety" for children and that in Alexandria's case she "isn't able to overcome some of her trauma because [OCS is] still involved."

Jade's attorney probed the credibility of Alexandria's preference for adoption. The caseworker reported that she had spoken with Alexandria's therapist and psychiatrist "many times" and that Alexandria's wishes had stayed consistent. The caseworker elaborated that Alexandria is "at the age where she can make that decision whether she wants to have contact with her mom or not" and that Alexandria's mental health struggles "[don't] change her cognitive ability to make those decisions."

In closing argument Jade reiterated her desire for a guardianship. The guardian ad litem's closing argument opposed Jade's request. OCS argued for termination without expressly addressing guardianship.

## D.    The Superior Court's Termination Order

After trial the superior court entered an order terminating Jade's parental rights. The court found that Alexandria was a child in need of aid on five grounds: abandonment, substantial risk of physical harm, substantial risk of mental injury, neglect, and substance abuse.[3] The court also discussed Alexandria's best interests, both when it addressed abandonment and when it concluded that termination was in her best interests.

In discussing abandonment the court stated:

[B]ecause of [Jade]'s willful disregard for her parental obligations, the parent-child relationship has been destroyed. . . . The child's best interests are served by the termination of [Jade]'s rights because she cannot safely parent the child, and [Alexandria] would be best served by being adopted.

---

[3]    See AS 47.10.011(1), (6), (8), (9), (10).

The court also determined that Alexandria's interests were best served by termination:

> [Jade] testified that she needed time to prove that she could reunify with [Alexandria]. However, considering the significant history with OCS, including the termination of her [rights to] other children due to the same safety concerns, it is unlikely that [Jade] will remedy her pattern within a reasonable time given that [Alexandria] herself has been in the custody of the Department for over two years.

The court's order did not expressly mention guardianship.

Jade appeals.

## III. STANDARD OF REVIEW

Whether termination of parental rights is in a child's best interests is a factual determination that we review for clear error.[4] Findings of fact are clearly erroneous if "a review of the entire record in the light most favorable to the party prevailing below leaves us with a definite and firm conviction that a mistake has been made."[5] "Conflicting evidence is generally insufficient to overturn the superior court, and we will not reweigh evidence when the record provides clear support for the superior court's ruling."[6]

Whether the superior court's factual findings satisfy the Child in Need of Aid (CINA) statutes is a question of law that we review de novo.[7]

---

[4] *Dena M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 442 P.3d 755, 760 (Alaska 2019).

[5] *Id.* (quoting *Barbara P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 234 P.3d 1245, 1253 (Alaska 2010)).

[6] *Maisy W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 175 P.3d 1263, 1267 (Alaska 2008) (footnote omitted).

[7] *Kylie L. v. State, Dep't of Health & Soc. Servs.*, 407 P.3d 442, 448 (Alaska 2017).

## IV. DISCUSSION

The superior court may not terminate parental rights unless it finds by a preponderance of the evidence that doing so is in the child's best interests.[8] Jade challenges the superior court's best interests finding in two ways. First, she argues that the superior court committed legal error by "fail[ing] to consider and eliminate the less drastic alternative of guardianship" when considering Alexandria's best interests. Second, she challenges the superior court's best interests finding, arguing that "[g]uardianship [rather than termination] was the proper outcome in this case."

### A.     The Superior Court Implicitly Rejected Guardianship.

The superior court must consider the best interests of the child when deciding whether to terminate parental rights.[9] We have held that the superior court must consider the alternative of guardianship only insofar as the court must order an arrangement that is in the child's best interests.[10]

Jade argues that when a parent seeks guardianship in lieu of termination the court must expressly consider and discuss guardianship. She maintains that "the fact that there may be evidence that *could* support a determination by the trial court to reject

---

**8**     *See* AS 47.10.088(c); CINA R. 18(c)(3).

**9**     AS 47.10.088(c); CINA R. 18(c)(3).

**10**    *A.J. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 62 P.3d 609, 614 (Alaska 2003) ("The superior court was not required to consider the less drastic alternative of guardianship in a termination proceeding."); *Doug Y. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 243 P.3d 217, 229-30 (Alaska 2010) ("The superior court is not required to consider guardianship in a termination proceeding, 'except to the extent that the statute requires the court to order an arrangement that is in the child's best interests.' " (quoting *C.W. v. State, Dep't of Health & Soc. Servs.*, 23 P.3d 52, 57 (Alaska 2001))); *C.W.*, 23 P.3d at 57 ("AS 47.10.088 does not require that guardianship be considered in termination proceedings, except to the extent that the statute requires the court to order an arrangement that is in the child's best interests.").

a guardianship does not relieve the trial court from making that determination in the first instance."

But we have repeatedly affirmed termination orders in which the court's rejection of guardianship was implicit. For example, in *Dena M.*[11] we affirmed a termination order that did not expressly discuss the parents' request for guardianship.[12] We did so because the superior court had "heard and actively questioned testimony on guardianship" before ultimately concluding that the parents' alcohol abuse and the children's special need for permanency left "no hope that either parent could be made capable of parenting either child" within a reasonable time.[13] We concluded that the court's order could be affirmed because the court had implicitly rejected the alternative of guardianship.

In *Doug Y.*[14] we came to a similar conclusion. The child had spent time in and out of OCS custody as a consequence of his father's inflicting excessive punishment.[15] The child's medical providers observed that he suffered from symptoms of PTSD, especially when confronted with "abuse triggers" like his father's facial expressions or belt.[16] The father argued that the court should appoint a guardian instead of terminating parental rights, but the superior court terminated the father's parental rights without expressly mentioning guardianship.[17] The father appealed, arguing that

---

[11]     *Dena M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 442 P.3d 755 (Alaska 2019).

[12]     *Id.* at 762.

[13]     *Id.*

[14]     *Doug Y.*, 243 P.3d at 229-30.

[15]     *Id.* at 220.

[16]     *Id.*

[17]     *Id.* at 229-30.

the superior court erred by choosing termination over a guardianship.[18] We rejected this argument because the superior court had "implicitly rejected the guardianship proposal" by noting that the child needed "stability and the certainty that he will be protected from his angry, abusive father."[19]

This case is similar. The superior court reasoned that due to Jade's "willful disregard for her parental obligations, the parent-child relationship has been destroyed." The court further concluded that "[t]he child's best interests are served by the termination of [Jade]'s rights because she cannot safely parent the child, and [Alexandria] would be best served by being adopted." The court found that Alexandria "deserves permanency in her life," which required severing Jade's parental rights. It also rejected Jade's argument for more time to prove she could reunify with Alexandria. Given these findings, it is apparent that the court found that a guardianship would not be in Alexandria's best interests. Under *Dena M.*, *Doug Y.*, and other cases, the superior court did not commit reversible error by failing to expressly state it had rejected Jade's arguments for a guardianship.[20]

---

[18]     *Id.*

[19]     *Id.* at 230 (alteration in original).

[20]     *See C.W. v. State, Dep't of Health & Soc. Servs.*, 23 P.3d 52, 57 (Alaska 2001) (affirming superior court's termination order in spite of parent's guardianship proposal because court had implicitly rejected that proposal in earlier rulings on visitation and custody); *A.J. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 62 P.3d 609, 614-15 (Alaska 2003) (rejecting parent's argument that superior court failed to consider guardianship when court had observed that parent's history of interfering with children's foster placements rendered outright termination in children's best interests).

**B.** **The Superior Court Did Not Clearly Err By Finding That Termination Served Alexandria's Best Interests.**

Jade also argues that "[g]uardianship was the proper outcome in this case." In doing so she challenges the superior court's factual finding that termination was in Alexandria's best interests. We review this factual finding for clear error.[21]

In determining whether termination is in the child's best interests, the superior court may consider "any fact relating to the best interests of the child."[22] "[T]here is no requirement that superior courts accord a particular weight to any given factor."[23] The analysis requires a "comprehensive judgment."[24]

Jade makes several arguments for why guardianship in lieu of termination was in Alexandria's best interests. First, Jade asserts that prior to OCS involvement she "always exercised her parental control in a way that kept Alexandria safe" and "was protective of her daughter's mental health." As support for this assertion, she points out that she relied on Elizabeth to keep Alexandria safe prior to her relapse, that she did not ask the court to reunify her with Alexandria, and that she took steps to address Alexandria's self-harming behaviors when she first learned of them.

This argument recites facts that reflect well on Jade's parenting without addressing the court's findings related to abandonment, substance abuse, domestic violence, neglect, and failure to protect Alexandria from sexual abuse. Without

---

[21] *Dena M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 442 P.3d 755, 760 (Alaska 2019).

[22] *Hannah B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 289 P.3d 924, 932 (Alaska 2012) (citing *Doe v. State, Dep't of Health and Soc. Servs., Off. of Child.'s Servs.*, 272 P.3d 1014, 1023 (Alaska 2012)).

[23] *Id.* (quoting *Doe*, 272 P.3d at 1025).

[24] *Thea G. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 291 P.3d 957, 966 (Alaska 2013), *abrogated on other grounds by State Dep't of Health and Soc. Servs., Off. of Child.'s Servs. v. Cissy A.*, 513 P.3d 999 (Alaska 2022).

challenging these findings, Jade's argument is effectively a request for us to reweigh the evidence. Given the clear support for the superior court's factual findings, including the evidence of domestic violence and substance abuse, we will not overturn them.[25]

Second, Jade asserts that termination was not necessary to address Alexandria's medical needs. Jade observes that a guardianship would permit Elizabeth to approve Alexandria's medication changes without the harm of severing Alexandria's connections to her maternal family.

Jade is correct that termination was unnecessary to address the problem of obtaining consent for Alexandria's medication changes. But this point fails to account for all the other reasons supporting termination: the therapist's testimony that Jade functioned as a trigger for Alexandria's symptoms; Elizabeth's testimony regarding Jade's inappropriate communications with Alexandria; or the evidence of Jade's involvement in substance abuse and domestic violence. This point fails to meaningfully undermine the superior court's best-interests finding.

Third, Jade observes that Alexandria continued to struggle with mental health and self-harm throughout the duration of her case with OCS, including a suicide attempt that occurred weeks prior to the close of the termination trial. Jade argues that removing Alexandria from her care did not prevent these mental health issues and suggests that termination will not cure them either. But pointing out that Alexandria has persistent mental health issues does not negate testimony indicating that Jade exacerbates those issues. Witnesses testified that leaving Jade with a legal avenue to force contact would be detrimental to Alexandria's well-being.

Fourth, Jade argues that guardianship would allow Alexandria to maintain a legal connection to Jade and the rest of her maternal family. She points out that

---

[25]    *Maisy W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 175 P.3d 1263, 1267 (Alaska 2008) ("[W]e will not reweigh evidence when the record provides clear support for the superior court's ruling.").

Alexandria has a close relationship with her maternal grandmother. Jade observes that she had achieved an eleven-year period of sobriety in the past and may become sober again in the future. Jade argues that after her recovery, she may rebuild a healthy and supportive relationship with Alexandria. Since this potential relationship, along with ties to other maternal family members, could help Alexandria navigate her mental health struggles, Jade argues that unnecessarily cutting off the legal connection is not in Alexandria's best interests.

But the evidence presented at trial significantly undercuts Jade's assertions. Elizabeth testified that she would support Alexandria's relationship with Jade if Jade's condition improved. And Jade conflates her legal parental rights with Alexandria's broader relationships with maternal relatives, even though the two are not invariably connected. The record contradicts the notion that termination of Jade's rights would sever Alexandria's connection with her maternal relatives. Elizabeth testified that, under her care, Alexandria talks with her grandparents, stepbrother, or cousin over the phone on "close to a daily basis." She testified that her family visits Alexandria's grandmother "more than a couple times a month" and that Alexandria often stays the night with her grandparents. Elizabeth further testified that she "would never keep [Alexandria] from her grandmother." The record contradicts Jade's argument that termination will undermine Alexandria's family support system.

Fifth, Jade suggests that Alexandria's expressed preference for adoption should receive only minimal weight. She points out that Alexandria is a teenager (fifteen years old at the time of the trial) with extreme mental health struggles. She also notes that Alexandria is a "people pleaser" who knows that both OCS and Elizabeth prefer adoption to guardianship. The thrust of Jade's argument is that Alexandria's preferences are not a credible indicator of her own best interests.

"[I]t is 'the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence.' "[26] We "ordinarily will not overturn a trial court's finding based on conflicting evidence" and "will not reweigh evidence when the record provides clear support for the trial court's ruling."[27] The caseworker testified that she had spoken with Alexandria's medical providers "many times" and found Alexandria's preferences credible despite her age and mental health struggles. Alexandria's therapist corroborated the caseworker's account. This testimony clearly supports the superior court's finding that Alexandria's expressed preference for adoption was credible.

None of Jade's arguments leaves us with a "definite and firm conviction that a mistake has been made."[28] The superior court did not clearly err in finding that termination, rather than guardianship, served Alexandria's best interests.

## V. CONCLUSION

We AFFIRM the order terminating Jade's parental rights.

---

[26] *Pam R. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 185 P.3d 67, 71 (Alaska 2008) (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)).

[27] *Id.*

[28] *Dena M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 442 P.3d 755, 760 (Alaska 2019) (quoting *Barbara P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 234 P.3d 1245, 1253 (Alaska 2010)).